UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

NICOLE SPENCER, et. al., :
:
v. : C.A. No. 17-00428-WES
:
BURRILLVILLE SCHOOL :
COMMITTEE :

**REPORT AND RECOMMENDATION**

Lincoln D. Almond, United States Magistrate Judge

**Background**

This is an action for review of the decision ("Decision") of a due process hearing officer ("Hearing Officer") under the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 et seq. ("IDEA" or the "Act"). Section 1415(i)(2)(A) of the Act provides that any party aggrieved by a decision made at the conclusion of an IDEA administrative hearing may bring a civil action in this Court seeking review of the decision.

Before this Court are the Cross-Motions for Summary Judgment (ECF Doc. Nos. 8 and 15) filed on December 1, 2017 and February 27, 2018. The parties are the Burrillville School Committee and School Department ("Burrillville") and Nicole Spencer and her parents Albert and Holly Spencer ("Plaintiffs" or "the Spencers"). This matter was referred to me for preliminary review, findings and recommended disposition. 28 U.S.C. § 636(b)(1)(B); LR Cv 72. After reviewing the Administrative Record, the parties' Memoranda and considering relevant legal research, I recommend that the Spencer's Motion for Summary Judgment be DENIED and Burrillville's Motion for Summary Judgment be GRANTED.

**Statement of Facts**

Nicole Spencer is a bright, college-bound student who was diagnosed at age 2 with cerebral palsy. (ECF Doc. No. 8-1 at p. 1, ECF Doc. No. 18-1 at p. 4). Nicole began receiving early intervention services at approximately three years of age, and upon moving to Burrillville, she received services through an Individualized Education Plan ("IEP") beginning at age 5. (ECF Doc. No. 18-1 at p. 4). Nicole was homeschooled by her mother beginning during her fifth-grade year, returning in her eighth-grade year to Burrillville schools. Id.

After she returned to Burrillville schools, Nicole was evaluated in early 2013 by Dr. Dana Osowiecki, a Clinical Neuropsychologist, and was subsequently diagnosed with Autism Spectrum Disability, Pervasive Development Disorder. Id. The parties agreed on an IEP following Dr. Osowiecki's diagnosis. (ECF Doc. No. 8-1 at p. 2).

In eighth grade, Nicole's grades in math declined throughout the school year, which culminated in her parents receiving a notice during the third quarter that she was in danger of failing. (ECF Doc. No. 18-1 at p. 4). Nicole's parents requested additional support in math, and Burrillville agreed to provide a math tutor, Barbara Menard, who subsequently tutored her from May 2014 through June 2015. Id. Ms. Menard was not a special educator, and was provided as a supplemental aid by Burrillville, but her tutoring was not mandated by – or memorialized in – Nicole's IEP. (ECF Doc. No. 17 at p. 3; ECF Doc. No. 8-3 at p. 5).

In ninth grade, Nicole took Algebra I with numeracy support and her IEP called for a math teacher and a special educator to be present in the math class. Nevertheless, no special educator was assigned to the class. (ECF Doc. No. 18-1 at p. 5; ECF Doc. No. 8-3 at pp. 5-6). Nicole attended a program called BELLA (Burrillville Extended Learning Laboratory Academy) available to all students, throughout ninth grade and received assistance in math. She passed

Algebra I and was on track to take Geometry in tenth grade. (ECF Doc. No. 18-1 at p. 5).

In the spring of her ninth-grade year, several events occurred which brought about a focus on Nicole's performance and progress in math. First, Burrillville sought to discontinue the tutoring Nicole was receiving, and second, Nicole's parents became aware that her math classroom did not have a special educator present. (ECF Doc. No. 8-3 at p. 6). Ultimately, Nicole's parents requested that a psychoeducational assessment of Nicole be conducted by Burrillville. Dr. Osowiecki conducted the assessment in the summer of 2015 and noted that "[e]xecutive functioning challenges can impact day-to-day performance with math activities." (ECF Doc. No. 18-1 at pp. 4-5). Dr. Osowiecki found that Nicole made "educational progress in math between 2013 and 2015" and that Nicole did not have a learning disability in math. (ECF Doc. No. 17 at p. 6). She stated that Nicole's "basic math knowledge was average relative to age norms on the Calculation subtest" of the Woodcock-Johnson Achievement test and that "[t]he only math subtest that showed a weakness was her math fluency subtest, a speed-based test, which was below average." (ECF Doc. No. 17 at pp. 6-7). Dr. Osowiecki identified that Nicole made progress in math despite the fact that it was a "non-preferred activity for Nicole." Id. at p. 7. Dr. Osowiecki determined that rather than being learning disabled in math, Nicole had a processing disorder that "impacted all activities that required speed." Id. at p. 8. Dr. Osowiecki testified at the Hearing and submitted a thorough report describing the assessment.

At the IEP meeting in August 2015, Dr. Osowiecki's recommendations were reviewed, along with Nicole's scores and grades, and the District determined that the math goal that existed in the May 2015 IEP should be eliminated. Id. The IEP team discussed Nicole's processing speed deficit in all academic areas and made several recommendations that were specific to math. (ECF Doc. No. 17 at p. 10). The IEP provided to Plaintiffs on September 16, 2015 did not include

a math goal or tutoring or any individualized instruction. (ECF Doc. No. 8-3 at p. 13).

In September 2015, Plaintiffs requested that Burrillville pay for a neuropsychological evaluation by Dr. Allison Evans. Ultimately, Dr. Evans conducted her evaluation including a single classroom visit, and her report was shared with Burrillville. (ECF Doc. No. 18-1 at pp. 5-6). Dr. Evans testified as an expert in clinical neuropsychology and, as noted in the Decision, she "concur[red] with all of the recommendations provided" by Dr. Osowiecki. Id. at p. 15. The Hearing Officer found, after listening to the testimony, that Dr. Evans' "additional testing…did not add new information to Dr. Osowiecki's." Id. at pp. 18-19. The parties litigated the payment issue, and the Hearing Officer found that Plaintiffs were not entitled to reimbursement for the evaluation conducted by Dr. Evans. Id.

Plaintiffs requested an impartial due process hearing on February 1, 2016. Eight hearing days were held between February and May 2016. The Hearing Officer issued his decision on August 18, 2017 finding that Nicole's IEP afforded her a Free Appropriate Public Education ("FAPE"), despite not including a math goal, math objectives or specialized instruction in math. The Hearing Officer also held that Nicole is not entitled to any ESY services or math tutoring and that such was appropriately excluded from her IEP, that she is not entitled to compensatory services and that her parents are not entitled to reimbursement for the Evaluation conducted by Dr. Evans. The Spencers have appealed the Hearing Officer's decision as to FAPE, as well as compensatory services. Plaintiffs do not appeal the Decision as to the reimbursement of Dr. Evans. For the reasons discussed below, the Court concludes that the Hearing Officer's determination is legally correct, supported by the record and should be AFFIRMED.

**Standard of Review**

When an action is brought challenging a hearing officer's decision, the IDEA provides that the court: (i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate. 20 U.S.C. § 1415(i)(2)(C).

A district court, when reviewing an administrative decision under IDEA, is required to give "due deference" to a hearing officer's findings of fact. Abrahamson v. Hershman, 701 F.2d 223, 231 (1st Cir. 1983). However, a district court reviews a hearing officer's rulings of law under the IDEA framework de novo. See Ross v. Framingham Sch. Comm., 44 F. Supp. 2d 104, 111-112 (D. Mass. 1999), aff'd 229 F.3d 1133 (1st Cir. 2000). Therefore, this Court should disregard any rulings not in accordance with applicable statutes and precedents. See id. (citing Abrahamson, 701 F.2d at 231). At the same time, the Court is "not at liberty either to turn a blind eye to administrative findings or to discard them without sound reason." Lenn v. Portland Sch. Comm., 998 F.2d 1083, 1087 (1st Cir. 1993). Indeed, the Court's "independence is tempered by the requirement that the court give 'due weight' to the hearing officer's findings," which "reflects the concern that courts not substitute their own notions of educational policy for that of the state agency, which has greater expertise in the educational arena." Lt. T.B. ex rel. N.B. v. Warwick Sch. Comm., 361 F.3d 80, 83-84 (1st Cir. 2004) (quoting Roland M. v. Concord Sch. Comm., 910 F.2d 983, 989 (1st Cir. 1990)).

The parties have asked the Court to decide the case on the basis of the Administrative Record by way of cross-motions for entry of judgment. This is not to be confused with the typical pre-trial summary judgment procedure in which the Court must consider the facts in the light most favorable to the non-moving party. Cranston Sch. Dist. v. Q.D., No. C.A. 06-538ML, 2008 WL 4145980, at *5 (D.R.I. Sept. 8, 2008). Rather, under the IDEA, the party challenging the outcome

of the administrative decision bears the burden of proof. Roland M., 910 F.2d at 991 ("[I]n cases arising under the Act, the burden rests with the complaining party to prove that the agency's decision was wrong.").

**Analysis**

Under the IDEA, public schools are required to provide a FAPE to children with disabilities. 20 U.S.C. § 1412(a)(1). A FAPE encompasses special education and related services, 20 U.S.C. § 1401(9), including "specially designed instruction, at no cost to parents, to meet the unique needs of a child with a disability...." 20 U.S.C. § 1401(29). In order to be eligible for special education services, a child must qualify as a "child with a disability." Under 34 C.F.R. § 300.8(a)(1) and R.I. Reg. § 300.8(a)(1), a child with a disability means a child, aged three to twenty-one, evaluated in accordance with §§ 300.304 through 300.311 as having certain impairment(s) and who, by reason thereof, needs special education and related services.

In the present case, Plaintiffs state that "the only issue in dispute is whether Nicole is entitled to any special education services in math, and, if she is, what services are required." (ECF Doc. No. 21 at pp. 1-2). Plaintiffs assert that without special education in math, Nicole could be unable to make "the progress appropriate in light of her circumstances, as a bright college bound student with autism and cerebral palsy." Id. at p. 2.

**I. Whether the Hearing Officer Applied the Correct FAPE Standard**

Plaintiffs bear the burden of proof in overturning the decision, and their first challenge is their contention that the Decision is "not entitled to any deference" because the Hearing Officer did not "mention…Endrew F. even once, and he did not cite to any legal authority at all in his findings and conclusions." (ECF Doc. No. 8-1 at p. 6). Plaintiffs contend that this flaw is fatal because Endrew F. v. Douglas Cty. Sch. Dist., 137 S. Ct. 988 (U.S. 2017) a March 2017 Supreme

Court decision, "set out a new standard for evaluating whether a school district met its obligation to provide FAPE…." Id. at p. 7. Plaintiffs assert that "Endrew F. teaches that 'the progress appropriate in light of the child's circumstances' must be considered." Id. at p. 9 citing Endrew F., 137 S. Ct. at 996, 999.

Defendants counter this attack with a two-pronged defense. First, Defendants assert that Endrew F. did not rework the existing legal standard in the First Circuit, and second, Defendants claim that even if the Court determined that Endrew F. was, in fact, a new standard, the findings made by the Hearing Officer satisfy Endrew F.

It is undisputed that the parties submitted Supplemental Memoranda to the Hearing Officer that specifically addressed the impact of the Endrew F. decision. (ECF. Doc. No. 8-3 at p. 17). In their Supplemental Memoranda, Plaintiffs argued to the Hearing Officer that Endrew F. supplied "new guidance" to the First Circuit, while Burrillville argued that Endrew F. should have "no impact on the outcome of this case," because the standard was substantively the same as that applied by the First Circuit. (Supplemental Memoranda of Law, Administrative Record). Despite these supplemental submissions, the Hearing Officer elected not to address the impact of the case, but instead cited and applied longstanding First Circuit precedent first set forth in D.B. v. Esposito, 675 F.3d 26 (1st Cir. 2012). Plaintiffs urge this Court to review the application of the law by the Hearing Officer and reverse the Decision. After consideration of the arguments presented, I conclude that the law applied in the Decision is consistent with the standard announced in Endrew F.

In Endrew F., the Supreme Court rejected the Tenth Circuit Court of Appeals' "merely more than de minimus" standard for progress. 137 S. Ct. at 992. The Court stated that, "[t]o meet its substantive obligation under the IDEA, a school must offer an IEP reasonably calculated

to enable a child to make progress appropriate in light of the child's circumstances." Endrew F., 137 S. Ct. at 999. The Tenth Circuit's standard, which was under scrutiny in Endrew F., is not consistent with the standard that has been applied in the First Circuit. The Court of Appeals for the First Circuit applies a FAPE standard that requires a consideration of whether the school district has implemented an IEP that is "reasonably calculated" to ensure that the child receives "meaningful education benefits" consistent with the child's learning potential. See D.B. v. Esposito, 675 F.3d at 34. As noted, it was the Esposito standard, but not Endrew F., that was cited in the Hearing Officer's decision.

Although the Court of Appeals has not squarely addressed the coexistence of its FAPE standard with that of Endrew F., the Third Circuit and the First Circuit employ the same "meaningful benefit" standard, and the District Court for the Eastern District of Pennsylvania recently discussed that standard in light of Endrew F. See Jack J. through Jennifer S. v. Coatesville Area Sch. Dist., No. 17-3793, 2018 WL 3397552, *10 (E.D. Pa. July 12, 2018). That Court noted that, "both the Supreme Court and the Third Circuit emphasize that an IEP must be tailored to the particular child for which it is crafted; [the student's] IEP must aim to enable [the student] to make progress and receive meaningful educational benefits in light of [the student's] circumstances and intellectual potential." Notably, in applying its long-standing standard, which is identical to the First Circuit's standard, that Court did not note any tension created by Endrew F., but considered the existing "meaningful benefit" standard to be consistent with Endrew F.'s holding. Like the Eastern District of Pennsylvania, I do not find any inconsistency between the existing First Circuit precedent and the holding in Endrew F..

Nevertheless, even if Endrew F.'s holding was viewed as a revision of the First Circuit standard, I conclude that the findings of fact set forth in the Hearing Officer's decision sufficiently

meet that standard and that there was no legal error. For example, Plaintiffs assert that the Court must consider Endrew F.'s guidance that requires that the "child's potential must be considered in determining whether the educational program meets the Supreme Court's test: whether the IEP is 'reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances.'" (ECF Doc. No. 21 at p. 15 quoting 137 S. Ct. at 999). Plaintiffs contend that Nicole's passing grades and scores were outweighed by, inter alia, her "extremely low" PSAT scores and difficulty with basic math concepts such as "fractions, decimals, and signs." (ECF Doc. No. 21 at p. 17). Defendants note that the Court must consider the progress Nicole made within the general education curriculum at Burrillville, which they assert is the IDEA's "ultimate goal." Defendants cite Endrew F.'s admonition that in the case of a child such as Nicole who is mainstreamed, the "system itself monitors the educational progress" of the child via examinations, grades, and because "for a child fully integrated in the regular classroom an IEP typically should….be reasonably calculated to enable the child to achieve passing marks and advance from grade to grade." (ECF Doc. No. 36 at pp. 3-4).

The Hearing Officer found that Nicole "continued to make academic progress in the area of math by her meeting the educational standards within the District," that Dr. Osowiecki's evaluation was the basis for the determination that Nicole's "math goal could be eliminated going forward…" and that Nicole "did not need math goals to access a [FAPE]." (ECF Doc. No. 36 at pp. 3-4). The Hearing Officer also cited testimony of Jack Jalette, a special educator; and Kimberly Pristawa, Burrillville's Director of Pupil Personnel services, "both of whom were qualified as experts at the time of their testimony" who supported Burrillville's contention that Nicole "made progress in the current year in an inclusive math classroom without goals, objectives or tutoring which is exactly what the IEP draft of 2016-2017 school year called for." (ECF Doc.

No. 18-1 at p. 13). The Hearing Officer based his decision on the testimony and reports submitted and made specific findings that satisfy Endrew F. Accordingly, I reject Plaintiffs' call to overturn the Hearing Officer's decision because he did not cite and follow Endrew F.

**II. Whether Nicole's IEP Deprived her of a FAPE**

The remaining issue is whether Nicole required specially designed instruction in math and the denial of such deprived her of a FAPE. Given the underlying burden of proof and applicable standards of administrative review, the Spencers face a difficult task in this appeal. As noted, the Hearing Officer heard the testimony of Dr. Evans, Dr. Osowiecki, as well as Nicole's math teacher, Ms. Pleau; Ms. Pristawa, Director of Pupil Personnel Services; and Special Educator, Mr. Jalette. The Hearing Officer found, by a preponderance of the evidence, that Nicole "continued to make academic progress in the area of math as demonstrated by her meeting the educational standards within the district;" that she "benefits from reasonable accommodations in math instruction;" and that she "does not have a learning disability in the area of math." (ECF Doc. No. 18-1 at p. 18). The Hearing Officer concluded that Dr. Osowiecki's evaluation and determination to eliminate the math goal was appropriate and that she did not "need math goals to access a [FAPE]."

The Spencers initially assert that the Hearing Officer erred by basing his FAPE determination on Nicole's advancement from grade to grade. This argument fails because it inaccurately portrays the basis of the Hearing Officer's Decision. Although it is apparent that the Hearing Officer considered Nicole's advancement, there was ample support in the record that it was not only her math grades, but the testimony and examination of Dr. Osowiecki and other educators that ultimately guided his determination that Nicole did not need special education in math. A review of the parties' memoranda and the Administrative Record reveals that the

Hearing Officer was faced with conflicting evidence on these points. The Court, as noted above, is required to give "due deference" to the Hearing Officer's resolution of those conflicts and findings of fact. The Court must "afford deference to findings that credit local educators over the testimony of outside experts." Joanna S. v. S. Kingstown Pub. Sch. Dist., C.A. No. 15-267M, 2017 U.S. Dist. LEXIS 38818, *66 (Jan. 11, 2017) citing Sebastian M. v. King Philip Reg'l Sch. Dist., 685 F.3d 79, 86 (1st Cir. 2012) (proper to credit testimony of educators over outside experts who spent little time with child).

Moreover, "the hearing officer's resolution of inconsistencies in the testimony of dueling experts is a first-instance administrative determination that is entitled to judicial deference." Id. The credibility determinations made by the Hearing Officer "are entitled to particular deference." Id. See Sudbury Pub. Sch. v. Mass. Dep't of Elementary & Secondary Educ., 762 F. Supp. 2d 254, 262 (D. Mass. 2010) (relying on hearing officer's credibility assessment as supported by the record where "[c]redibility determinations are the province of the factfinder, in this case the Hearing Officer"). "Such deference recognizes that judges are not 'trained pedagogues,' and therefore the court must 'accord deference to the state agency's application of its specialized knowledge.'" Id. at *67 citation omitted; Roland M., 910 F.2d at 989 ("Jurists are not trained, practicing educators."). This Court has noted that, when reviewing a "cold administrative record," it must "defer[] to the credibility determinations of the Hearing Officer, who heard live testimony and whose credibility findings are entitled to special weight." S.C. by & through N.C. v. Chariho Reg'l Sch. Dist., 298 F. Supp. 3d 370, 382 (D.R.I. 2018). Thus, the issue is not whether this Court would have made the same determinations as the Hearing Officer, but rather whether the determinations made are reasonably supported by the record and, if so, whether the Hearing Officer properly applied the law regarding FAPE to those findings. The Hearing Officer

plainly understood and relied upon these legal principles in reaching his conclusion on the issue of FAPE.[1]

While Nicole's parents have been zealous advocates for their daughter and expressed strong dissatisfaction with Nicole's math SAT scores and a strong preference for the tutoring she was receiving, they have not met their burden of establishing that the Hearing Officer erroneously concluded that Burrillville's IEP would provide Nicole with FAPE. The Hearing Officer correctly followed and applied applicable law and conducted a thorough review of the evidence presented to him over eight hearing days. The Court has reviewed the underlying record and finds that the Hearing Officer's factual findings have sufficient evidentiary support and thus are entitled to "due deference."

**Conclusion**

For the reasons stated, I recommend that Burrillville's Motion for Summary Judgment (Document No. 15) be GRANTED and Plaintiffs' Motion for Summary Judgment (Document No. 8) be DENIED and that the District Court conclude that the Hearing Officer's determination is legally correct and adequately supported by the Administrative Record and should be AFFIRMED.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within fourteen days of its receipt. Fed. R. Civ. P. 72(b); LR Cv 72. Failure to file specific objections in a timely manner constitutes a waiver of the right to review by the District Court and the right to appeal the District Court's decision. See United States v.

---

[1] Because I find she received a FAPE, I further determine she is not entitled to compensatory education. C.G. ex rel. A.S. v. Five Town Cmty. Sch. Dist., 513 F.3d 279, 290 (1st Cir. 2008) ("Compensatory education is a surrogate for the warranted education that a disabled child may have missed during periods when his IEP was so inappropriate that he was effectively denied a FAPE.").

Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

   /s/   Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
August 27, 2018